# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE D. JOHNSON, | Case No. SACV 10-01576-OP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

///
///
///

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 10.)

[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

# I.
# DISPUTED ISSUE

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly considered the treating physician's opinion; and

(2) Whether the ALJ properly found at step five of the disability analysis that Plaintiff was capable of performing alternative work.

(JS at 6.)

# II.
# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /
/ / /
/ / /

# III.
# DISCUSSION

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff has the following severe combination of impairments: hypertension; chronic kidney disease, stage 3; diabetes mellitus, type 2; obesity; and ischemic heart disease, class II. (AR at 14.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work with the following limitations: he is able to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for two hours, with the use of a cane as needed; sit for eight hours in an eight-hour workday; and perform only simple repetitive tasks. (Id. at 15.) Plaintiff cannot climb ladders, work at heights, or balance, but he can climb stairs. (Id.) Finally, Plaintiff's work environment must be air-conditioned, and he is precluded from reading and writing complicated material. (Id.) Relying on the testimony of the vocational expert ("VE"), the ALJ found that Plaintiff could not perform his past relevant work as a cleaner but was capable of performing alternative work as a bench assembler (Dictionary of Occupational Titles ("DOT") 706.684-022) and an information clerk (DOT 237.367-018). (AR at 22-23.)

**B.    Treating Physician.**

   **1.    Background.**

Plaintiff contends that the ALJ failed to properly consider the opinions of his treating physician M. Rahmi Mowjood, D.O., or to provide specific and legitimate reasons, supported by substantial evidence, to reject the doctor's opinions. (JS at 6-11.)

On December 26, 2007, Dr. Mowjood completed a Multiple Impairment Questionnaire in which he stated that Plaintiff suffered from hypertension, diabetes, high cholesterol, kidney disease, and a past stroke. (AR at 531.) Dr. Mowjood opined at that time that Plaintiff could stand and/or walk for up to six

hours in an eight-hour day and could sit for eight hours in an eight-hour day. (Id. at 533.) Dr. Mowjood further concluded that Plaintiff could left up to ten pounds frequently and up to fifty pounds occasionally. (Id. at 534.) According to the 2007 Questionnaire, Plaintiff did not have any limitations in his ability to use his upper extremities and could tolerate moderate stress. (Id. at 534-36.) Dr. Mowjood estimated that Plaintiff's symptoms would cause him to be absent from work about two to three times a month. (Id. at 537.)

In a May 7, 2008, Medical Clearance letter, Dr. Mowjood stated that Plaintiff continued to exhibit poor memory as a result of his past stroke and that his memory deficit would prevent him from working. (Id. at 506.)

In a March 24, 2009, Disability Addendum letter, Dr. Mowjood reiterated that Plaintiff suffered from memory loss due to his stroke and that he also presented with challenges to his fine motor skills. Dr. Mowjood opined that his initial assessment that Plaintiff could perform work activity was greatly reduced as a result of Plaintiff's symptoms. (Id. at 584.)

On June 6, 2008, Dr. Mowjood completed a second Multiple Impairment Questionnaire. (Id. at 465-72.) Dr. Mowjood stated that Plaintiff suffered from diabetes, hypertension, heart disease, a past stroke resulting in mild paresis without specific neurological deficits, and hypothyroidism. (Id. at 465.) Dr. Mowjood explained that Plaintiff presented with positive clinical findings, including, as relevant here, muscle weakness with loss of dexterity. (Id.) Dr. Mowjood restricted Plaintiff to standing and/or walking for up to one hour in an eight-hour day and sitting for up to eight hours in an eight-hour day. (Id. at 467.) According to Dr. Mowjood, Plaintiff could lift and carry up to five pounds frequently and up to ten pounds occasionally. (Id. at 468.) In addition, Dr. Mowjood found that Plaintiff had moderate limitations in his ability to grasp, turn, and twist objects, as well as in his ability to use his fingers and hands for fine manipulations. (Id. at 469.) Plaintiff also could not engage in pushing, pulling,

kneeling, bending, or stooping. (Id. at 471.) Dr. Mowjood stated that Plaintiff's symptoms would frequently interfere with his ability to concentrate and that he was incapable of even low stress work. (Id. at 470.) Finally, Dr. Mowjood estimated that Plaintiff would need to take unscheduled breaks from work hourly and that each break would last about twenty minutes. (Id.)

The ALJ indicated the following regarding Dr. Mowjood's opinions:

> The undersigned has read and considered the Multiple Impairment Questionnaires completed by Dr. Mowjood dated December 26, 2007 and June 6, 2008, and the undersigned finds these conclusions have no probative value and rejects it. Dr. Mowjood stated he first treated the claimant on August 15, 2007 on a monthly basis through May 21, 2008. He reported the claimant's diagnoses included type II diabetes, hypertension, heart disease, tobacco use, status post cerebrovascular accident (CVA), and hypothyroidism. . . . These questionnaires appear to have been completed as an accommodation to the claimant and include only conclusions regarding functional limitations without any rationale for those conclusions. The undersigned finds this evidence has no probative value because it is not supported by any objective evidence.
>
> The undersigned has also read and considered the temporary disability statement by Dr. Mowjood included in his letter dated May 7, 2008, and the undersigned finds this conclusion has no probative value and rejects it. . . . The undersigned has considered both letters and finds it has no probative value with regard to determining the claimant's disability in relation to his ability to work. As an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance pursuant to 20 CFR 404.1527(e).

(AR at 20-21 (citations omitted).)

### 2. **Legal Standard.**

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

### 3. **Questionnaires.**

The ALJ specifically rejected Dr. Mowjood's assessment regarding Plaintiff's ability to stand/walk and sit, as reflected in the two Multiple Impairment Questionnaires. Although not specifically mentioned by the ALJ, it is apparent that the ALJ also rejected other portions of the Questionnaires, as many

of Dr. Mowjood's findings were not incorporated into the ALJ's ultimate RFC assessment. As discussed below, the ALJ failed to give specific and legitimate reasons for rejecting Dr. Mowjood's opinions.

First, the ALJ was incorrect in finding that Dr. Mowjood failed to provide any rationale for his opinions in the Questionnaires. In fact, Dr. Mowjood stated the diagnoses, clinical findings, and symptoms that supported his conclusions. In the 2007 Questionnaire, Dr. Mowjood stated that Plaintiff suffered from hypertension, diabetes, high cholesterol, kidney disease, and stroke. In addition, Dr. Mowjood explained that Plaintiff suffered from high blood sugar, hypertensive cardiovascular disease, slow memory due to his past stroke, exertional chest pain, and lower extremity swelling and weakness. (AR at 531-32.) Dr. Mowjood further explained that Plaintiff could not tolerate high stress because it would increase his blood pressure. (Id. at 536.) Similarly, in the 2008 Questionnaire, Dr. Mowjood stated that Plaintiff suffered from status-post cerebrovascular accident "[with] mild paresis [without] specific neurological deficits." (Id. at 465.) Dr. Mowjood further explained that he found positive clinical findings, including elevated blood pressure with ECG changes, elevated glucose levels, kidney changes, slightly slurred speech, muscle weakness, loss of dexterity, and memory loss. (Id.) Dr. Mowjood explained that Plaintiff's illness cause symptoms such as memory loss, fatigue, and difficulty remembering words, and that repetitive tasks cause him fatigue. (Id. at 466, 468.) Dr. Mowjood also explained that Plaintiff could not tolerate even low stress because of his difficulty formulating words. (Id. at 470.) Finally, in addition to the specific rationale given in the Questionnaires themselves, the record also contains treatment notes from Dr. Mowjood detailing Plaintiff's symptoms, his medical test results, his diagnoses, and his history of prescription medications, among other evidence. All of this evidence provided rationale for Dr. Mowjood's opinions.

The ALJ also rejected the Questionnaires because Dr. Mowjood's opinions

7

were not supported by objective evidence. This reason, without more, does not necessarily provide the level of specificity required for rejecting an opinion of a treating physician. "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity" the Ninth Circuit requires. Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); see also McAllister, 888 F.2d at 602 (finding that rejecting the treating physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Finally, the ALJ concludes that Dr. Mowjood's Questionnaires "appear to have been completed as an accommodation to the claimant." (AR at 20.) However, Dr. Mowjood's 2007 Questionnaire reflects physical limitations that are not nearly as conservative as the ALJ's ultimate RFC assessment, and it thus appears to defy logic to conclude that such an assessment would have been completed to accommodate Plaintiff. Moreover, to the extent that the 2008 Questionnaire is more conservative than the ALJ's ultimate RFC assessment, the ALJ still improperly rejected it as being an accommodation to Plaintiff. The ALJ did not point to any evidence showing impropriety on the part of Dr. Mowjood, and the ALJ may not assume that a treating physician lacks credibility merely because he was supportive of his patient. Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir. 1996) (error for ALJ to reject physician's opinion because physician was "compassionate and supportive of the patient"); Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.") (citation omitted) (internal quotation marks omitted).

### 4. Letters.

The ALJ also rejected Dr. Mowjood's opinions, as reflected in the May 7,

2008, and March 24, 2009, letters regarding Plaintiff's condition. The ALJ rejected the letters on the basis that by concluding Plaintiff was unable to work, Dr. Mowjood offered an opinion on an issue which is reserved to the Commissioner. (AR at 21.) As explained below, this is not a sufficient basis on which to reject the letters.

The Court recognizes that a determination of a claimant's ultimate disability is reserved to the Commissioner, and that a physician's opinion is not determinative. 20 CFR § 404.1527(e). However, the Ninth Circuit has explained that it does not distinguish between a medical opinion as to physical condition and a medical opinion on the ultimate issue of disability. Rodriguez v. Bowen, 876 F.2d 759, 762 n.7 (9th Cir. 1989). Moreover, according to the Social Security Administration:

> [O]pinions from any medical source on issues reserved to the Commissioner must never by ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.

Social Security Ruling ("SSR") 96-5p.[3]

In addition, although a physician's opinions as to disability might not be entitled to special significance, a physician's medical opinions unquestionably are entitled to greater consideration. McAllister, 888 F.2d at 602. In the letters, Dr. Mowjood gave his opinion as to the ultimate issue of whether Plaintiff can work,

---

[3] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

9

but the doctor also described his medical opinions as to Plaintiff's physical impairments. Specifically, Dr. Mowjood explained that as a result of Plaintiff's stroke he has suffered memory loss and is limited in his ability to perform fine motor skills. (AR at 506, 584.) These opinions do not go to the ultimate issue of disability. Thus, they were not properly rejected by the ALJ on this basis.

Based on the foregoing, the Court finds that the ALJ erred in failing to provide legally sufficient reasons for discounting Dr. Mowjood's opinions as reflected in the Multiple Impairment Questionnaires and the letters regarding disability. Accordingly, remand is required for the ALJ to set forth legally sufficient reasons for rejecting Dr. Mowjood's opinion, if the ALJ again determines rejection is warranted.[4]

## C. **Alternative Work.**

### 1. **Background.**

Plaintiff contends the ALJ improperly determined that he can perform alternative work as a bench assembler and information clerk because he does not possess the requisite skills set forth for those positions by the VE and in the DOT. Plaintiff argues that the ALJ's conclusion that he can perform the bench assembler position is contrary to the VE's testimony that the position would be eliminated in light of Plaintiff's use of a cane for walking and balance. Plaintiff further argues that the ALJ's conclusion that Plaintiff is precluded from reading and writing complicated material contradicts the finding that he can perform the position of information clerk as that position is defined by the DOT. (JS at 16-19.)

The ALJ posed the following hypothetical question to the VE at Plaintiff's hearing:

> [S]uppose someone has a high school education but is limited to being on their feet no more than a fourth of the time or a total of two

---

[4] The Court expresses no view on the merits.

|   |   |
|---|---|
| 1 | hours out of eight and has to be able to use a cane as needed which -- |
| 2 | can sit okay, needs normal breaks every two hours, lifting and carrying |
| 3 | would be limited to no more than once in a while or occasionally 20 |
| 4 | pounds and frequently to have to be ten pounds or less, could climb |
| 5 | stairs but not ladders, couldn't work at heights or balance, and should |
| 6 | work in an air conditioned environment, and shouldn't, should be |
| 7 | limited to simple repetitive tasks, no reading and writing complicated |
| 8 | materials. |

(AR at 96-97.) Based on this hypothetical, the VE testified that such an individual could not perform Plaintiff's past relevant work but could perform work as a bench assembler (DOT 706.684.042) and information clerk (DOT 237.367-018). (Id. at 97.) The VE explained that the number of available bench assembler positions would be eroded by fifty percent due to Plaintiff's limitation in his ability to be on his feet. (Id.) The VE further testified that the number of information clerk positions would also be eroded but did not specify the reason for the erosion, thereby implying that the cause for the erosion was also Plaintiff's limited ability to be on his feet. (Id. at 98.) The VE testified that his conclusions were consistent with the DOT. (Id.)

The following exchange then took place between Plaintiff's counsel and the VE:

> Q And in relation to the first hypothetical, if the hypothetical individual would need a cane for balance and that if they were standing, they would only have one upper extremity, could they perform the Bench Assembler and Information Clerk job?
>
> A Information Clerk, yes. Bench Assembler, looking at that job conservatively, no.

(Id. at 98-99.)

Ultimately, the ALJ relied on the VE's testimony in finding that Plaintiff

was capable of performing work as a bench assembler and information clerk. Thus, the ALJ concluded that Plaintiff was not disabled. (Id. at 23.)

### 2. **Bench Assembler.**

Once a plaintiff carries his burden at step four of the disability determination by showing that he cannot perform his past relevant work, as Plaintiff has done here, the burden shifts to the Commissioner to show at step five that the plaintiff is capable of performing other substantial gainful work. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).

Here, the ALJ concluded in his RFC assessment that Plaintiff would require the use of a cane as needed. (AR at 15.) The VE responded to the ALJ's original hypothetical, which included a limitation for the use of a cane, that the individual could perform work as a bench assembler. Although the VE eroded the number of bench assembler positions that Plaintiff could perform, he did so only on the basis of the stand/walk limitation and not based on the use of a cane. (Id. at 97.) Upon clarification by Plaintiff's counsel, the VE testified that an individual who required the use of a cane, and thus would be limited to the use of one upper extremity, would not be able to perform work as a bench assembler. (Id. at 98-99.) Accordingly, there is no support for the ALJ's determination that Plaintiff, who would require the use of a cane, would be capable of performing the bench assembler position.

### 3. **Information Clerk.**

The DOT raises a presumption as to the classification and requirements of a given job. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). However, that presumption is made rebuttable by Social Security regulations recognizing "vocational experts and several published sources other than the DOT as authoritative." Id. at 1435-36; 20 C.F.R. §§ 404.1566(d)(2)-(5), (e) (the use of vocational experts is particularly important where "the issue in determining

whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue"). Although evidence provided by a VE is generally expected to be consistent with the DOT, "[n]either the DOT nor the VE evidence automatically 'trumps' when there is a conflict." SSR 00-4p; <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1153 (9th Cir. 2007). The ALJ may rely on expert testimony that contradicts the DOT if the record contains persuasive evidence to support the deviation. See <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1042 (9th Cir. 2008). Indeed, the ALJ must determine whether the positions cited by the VE are consistent with the DOT. The ALJ must then determine whether the VE's explanation for the conflict is reasonable and whether there exists a basis for accepting the VE's testimony over the information contained in the DOT. <u>Massachi</u>, 486 F.3d at 1153 (citing SSR 00-4p). Furthermore, the ALJ must definitively explain the deviation. <u>Pinto</u>, 249 F.3d at 847. Evidence sufficient to permit deviation may be "either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony." <u>Light v. Soc. Sec. Admin</u>, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

At the hearing, the ALJ posed a hypothetical to the VE that included the assumption that the person would be precluded from reading and writing complicated material. (AR at 97.) In response, the VE testified that Plaintiff would be capable of performing work as an information clerk. (<u>Id.</u> at 97.) The VE further affirmed that his testimony complied with the DOT. (<u>Id.</u> at 98.) The ALJ relied on the VE's representation and did not question the VE further about any apparent deviations between his testimony and the DOT. (<u>Id.</u> at 23, 98-99.)

According to the DOT, the position of information clerk requires level three language skills. DOT 237.367-018. The DOT defines level three language skills to include the ability to read "a variety of novels, magazines, atlases,

encyclopedias, safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work," as well as the ability to write "reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech." DOT Appendix C.

Reading novels, encyclopedias, etc. and writing reports and essays with proper grammatical form certainly amounts to reading and writing complicated material. Although the VE eroded the number of information clerk positions that Plaintiff would be capable of performing, he did not give any reason for the erosion. To the extent a reason for the erosion can be inferred from the record, it appears to be based on Plaintiff's limited ability to stand and walk, not based on Plaintiff's limited ability to read and write. (AR at 99-98.) Thus, the VE's determination that Plaintiff is capable of working as an information clerk, which according to the DOT requires level three language ability, conflicts with the ALJ's conclusion that Plaintiff is precluded from reading and writing complicated material.

When there is an apparent conflict between the testimony of the VE and the definitions contained in the DOT, the ALJ must ask the VE to explain the deviation. <u>Massachi</u>, 486 F.3d at 1153 (citing SSR 00-4p). Here, notwithstanding the apparent conflict, the ALJ did not seek an explanation from the VE and did not provide one in his written opinion. As a result, the Court cannot accept the ALJ's determination, which relies on the VE's testimony, that Plaintiff can perform the job of information clerk.

Based on the foregoing, because the DOT indicates that the job of information clerk as generally performed requires a language level of three, remand is warranted for the ALJ to consider the impact, if any, of Plaintiff's limited ability to read and write on his ability to perform work as an information

clerk, and to sufficiently explain any deviation from the DOT.[5]

## IV.

## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED THAT Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

Dated: June 17, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge

---

[5] The Court further notes that the ALJ limited Plaintiff to work involving simple repetitive tasks. (AR at 15.) The job of information clerk is defined by the DOT as requiring a level four reasoning level, which is incompatible with a limitation to simple repetitive tasks. See Lara v. Astrue, 305 Fed. App'x 324, 325 (9th Cir. 2008) (finding that reasoning levels one and two are commensurate with a limitation to simple, repetitive tasks); see also Meissl v. Barnhart, 403 F. Supp. 2d 981, 983-85 (C.D. Cal. 2005) (finding plaintiff who was limited to simple repetitive tasks capable of performing work at a level two reasoning level); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (stating that reasoning level two appears more consistent with the capacity to perform "simple and routine work tasks"); Tudino v. Barnhart, No. 07-CV-2487-BEN (JMA), 2008 WL 4161443, at *11 (S.D. Cal. Sept. 5, 2008) ("[l]evel-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks"). Although Plaintiff has not presented a claim regarding the reasoning level here, on remand, the ALJ should consider whether the reasoning level of the jobs suggested is compatible with Plaintiff's ability to perform only simple repetitive tasks.